J-A01017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILFREDO ACOSTA-MEJIA | : | No. 209 EDA 2024 |

Appeal from the Order Entered December 19, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0004730-2023

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 21, 2025**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied the Commonwealth's motion to refile charges against Appellee, Wilfredo Acosta-Mejia.  We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows.  On March 16, 2023, around 10:00 p.m., at the Fox Chase Cancer Center on Cottman Avenue in Philadelphia, the complainant sat in his parked black Chevrolet Impala.  Two individuals opened the car door, pulled the complainant out of the car at gunpoint, and pepper-sprayed, kicked, and punched him.  The assailants took the complainant's phone and car keys and forced their way into the passenger and back seat of the Impala.  A third individual got into the driver's seat and drove the Impala away.  The complainant's mother picked him up and the complainant called the police.

Officers arrived at the complainant's home approximately 45 minutes after the crime had occurred and began tracking the Impala's location via the GPS on the complainant's iPad. Other officers located the Impala and followed it. Officers from the Aviation Unit began surveilling the area by helicopter and, after locating the Impala, illuminated it with a spotlight. The officers in the helicopter observed the Impala drive through red lights and stop lights before eventually coming to a stop around 5500 Miriam Road.[1] Three men fled the Impala. The helicopter officers directed an officer on the ground to a nearby car, where Appellee was hiding underneath.

On March 17, 2023, the Commonwealth filed a criminal complaint against Appellee and charged him with conspiracy, aggravated assault, carjacking, theft by unlawful taking, theft by receiving stolen property, possession of an instrument of crime, simple assault, recklessly endangering another person, unauthorized use of a motor vehicle, and two counts of robbery. On June 1, 2023, the parties appeared before the court for a preliminary hearing. Thereafter, the court dismissed all charges finding that the Commonwealth did not establish a *prima facie* case as to Appellee's identity as one of the perpetrators.

On June 5, 2023, the Commonwealth filed a motion seeking to refile charges against Appellee and his co-defendant, Jahlil Reece. The court held

---

[1] Testimony variously refers to this location as Miriam Avenue or Street. This Court takes judicial notice that this location is correctly referred to as Miriam Road.

a hearing on December 19, 2023, at which the Commonwealth presented the testimony of Philadelphia Police Officers Alex Dudek and Eric Lee. Following a hearing on December 19, 2023, the court granted the motion to refile as to Mr. Reece but denied the motion to refile as to Appellee.

The Commonwealth timely filed a notice of appeal on January 4, 2024. On January 10, 2024, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the Commonwealth complied on January 22, 2024.

The Commonwealth raises the following issues for our review:

> 1. Did the [trial] court err by denying the Commonwealth's refiling of all thirteen charges, which included but were not limited to lead charges of aggravated assault and robbery, where the totality of the evidence established a *prima facie* case to proceed to trial?
>
> 2. Did the refile court erroneously disregard that the Commonwealth produced additional evidence at the refile hearing that established a *prima facie* case of [Appellee's] identity as one of the perpetrators?

(Commonwealth's Brief at 4).

In its issues combined, the Commonwealth argues that the trial court applied an incorrect standard of proof that the Commonwealth must satisfy at the pre-trial stage, which is whether there was probable cause that Appellee was one of the people who had committed the crime. The Commonwealth claims that had the court applied the proper standard, it would have found sufficient evidence to hold the charges for trial. Specifically, the Commonwealth contends that three people stole the complainant's car; police

successfully tracked the car on the ground and from the air; three people were seen fleeing in the complainant's car; and Appellee was found under the white Dodge Charger which Aviation Unit Officers had observed two men running and hiding behind. In light of this evidence, the Commonwealth concludes that the court should have reinstated the charges against Appellee. We agree.

Our standard of review for an order dismissing a criminal charge, based on the sufficiency of the evidence establishing a *prima facie* case at a preliminary hearing is plenary:

> The trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial *prima facie* burden to make out the elements of a charged crime. Therefore, we are not bound by the legal determinations of the trial court.

***Commonwealth v. Ouch***, 199 A.3d 918, 923 (Pa.Super. 2018) (internal citations, quotations, and brackets omitted).

The purpose of a preliminary hearing is:

> to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime …
>
> The Commonwealth establishes a *prima facie* case when it produces evidence that, **if accepted as true**, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, **the weight and credibility of the evidence are not factors at this**

**stage**, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Id.* at 923 (internal citations, quotations, and indentation omitted) (emphasis in original). ***See also*** Pa.R.Crim.P. 542(D) (stating: "At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it").

Further:

The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. The "more-likely-than-not" test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability.

The more-likely-than-not test is the minimum standard— anything less rises no higher than suspicion or conjecture.

***Commonwealth v. Perez***, 666 Pa. 29, 48, 249 A.3d 1092, 1102-03 (2021) (citations and quotation marks omitted).

"[A] perpetrator's identity may be established with circumstantial evidence." ***Commonwealth v. Dunkins***, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" ***Id.*** (quoting ***Commonwealth v. Ovalles***, 144 A.3d 957, 969 (Pa.Super. 2016)). ***See also Commonwealth***

*v. Harris*, ___ Pa. ___, ___, 315 A.3d 26, 34 (2024) (noting that Commonwealth must prove *prima facie* case "both with respect to the elements of the crimes **and** the defendant's identity" and that the failure to prove *prima facie* case of either prong is fatal to the Commonwealth's case).

Instantly, the trial court denied the Commonwealth's motion to refile the charges against Appellee. The court reasoned:

> In the evidence presented in the case at bar, [Appellee] was not identified as one of the individuals who assaulted [the complainant] or getting in the vehicle or fleeing from the vehicle. This [c]ourt found that the Commonwealth was unable to establish that it was more likely than not that [Appellee] was the person who committed the crimes. [The complainant] never saw [Appellee's] face and unlike his description of [co-defendant] Reece where [the complainant] identified [Reece] by his clothing, [the complainant] was unable to provide any description at all of [Appellee] such as his shoes, clothing, physical attributes, gender or any other aspect. Even after [the complainant] was driven to the location where [Appellee] was detained by the police, he was unable to positively identify [Appellee] as one of the three individuals who perpetrated the carjacking, nor did [the complainant] identify [Appellee] at either hearing.
>
> [Appellee] was never seen in the vehicle by any of the Commonwealth's witnesses and was not apprehended until over two hours after the incident. Officer Lee lost sight of the vehicle while pursuing it and the police did not identify [Appellee] from the helicopter.

(Trial Court Opinion, 3/13/24, at 7-8).

We cannot agree with the court's analysis. A review of the evidence introduced at the preliminary hearing and the refile hearing reveals the following. The incident occurred around 10:00 p.m. on March 16, 2023. (**See**

N.T. Preliminary Hearing, 6/1/23, at 6).  The complainant was unable to get a clear view of his assailants due to being pepper-sprayed but knew that at least three people had stolen his car.  (*See id.* at 6-9).  When police arrived at the complainant's home, he showed them his iPad, which was live tracking the car.  (*Id.* at 16).  According to the complainant, about 10 minutes passed before the helicopter was able to get a visual of the Impala.  (*Id.* at 18).

Officer Ryan McGinnis testified that, while investigating the carjacking, he went to the complainant's house to relay live-tracking information to the Aviation Unit, which had picked up pursuit.  (*See id.* at 22).  He was in constant radio communication with the Aviation Unit's helicopter, which ultimately found the Impala at 5500 Miriam Road, approximately two miles away from where the incident had occurred.  (*Id.* at 22-23, 25).  Approximately 5 to 10 minutes later, he heard over the radio that someone had been stopped.  (*Id.* at 26).  Officer McGinnis then transported the complainant to 5500 Miriam Road, where three defendants had been detained.  (*Id.* at 24).

Lieutenant Ryan Teaford testified that on the date of the incident, at approximately 10:30 p.m., he was assigned to the Aviation Unit Tach Air helicopter.  (*See id.* at 28).  After receiving reports of the carjacking, he and his partner launched the helicopter and were in the 7th District area when he observed a marked vehicle attempting to stop a black Chevrolet vehicle, which was traveling southbound and not stopping for police overhead lights.  (*Id.* at 28-29, 32).  Once the helicopter got to that location, they illuminated the car

with a "night sun," or very large flashlight. (*Id.* at 29). The Chevrolet continued to flee, disregarding steady red signals, stop signs, and illegally passing vehicles at a high rate of speed southbound. (*Id.*). The car came to a stop around Miriam Road and Pratt Street, and three men fled from the vehicle. (*Id.* at 30). Two men ran northbound on Loretto Avenue[2] and hid behind a vehicle, while the third ran northbound on Miriam Road. (*Id.* at 30). Lieutenant Teaford estimated that about 5 to 10 minutes passed from the time he was in the air, until the suspects were stopped. (*Id.* at 25-26).

At the refile hearing, Police Officer Alex Dudek testified that on March 17, 2023, around 12:45 a.m., he responded to a report of a carjacking. (*See* N.T. Refile Hearing, 12/19/23, at 6-7). An officer on location advised him that the car was in the location of 9200 Bluegrass Road, and the Aviation Unit followed the vehicle from the air and relayed that the vehicle had stopped at Pratt and the Boulevard, and multiple men had exited the vehicle. (*See id.* at 7-8).

Police Officer Eric Lee testified that on March 17, 2023, around 12:45 a.m., he responded to reports of a carjacking. (*See id.* at 11-12). At that time, another officer was in pursuit of the black Chevy Impala; Officer Lee responded to the area as well and drove behind the vehicle for a time, but ultimately lost sight of the vehicle for a time. (*Id.* at 12). The Aviation Unit radioed that they had found the vehicle and that multiple men had exited the

_____

[2] The testimony refers to this location as Loretto Street. This Court takes judicial notice that this location is properly referred to as Loretto Avenue.

vehicle around the area of 900 Marcella Street. (*Id.* at 12). Officer Lee was still in the area when the Aviation Unit directed him to a white Dodge Charger, where he found Appellee hiding beneath the passenger side. (*Id.*). Officer Lee detained and arrested Appellee, and later identified him at the refile hearing. (*Id.* at 12-13).

Based on the above, the evidence supporting the charges may be summarized as follows. Three men stole the complainant's black Chevrolet Impala around 333 Cottman Avenue, which officers were able to live track via GPS. An officer relayed the GPS information directly to the Aviation Unit as it flew in pursuit. The complainant believed police officers arrived at his house approximately 45 minutes after the incident, and the helicopter unit had a visual of the Impala approximately 10 minutes after taking off. Police testimony established a continuous view, from various officers, of the Impala before it was stopped. The Aviation Unit ultimately located the Impala around 5500 Miriam Road and then stopped the car around Pratt Street and Loretto Avenue. There, three men fled from the car and ran within a few blocks of that location. The Aviation Unit radioed to Officer Lee that one man was hiding beneath a white Dodge Charger, not far from where the Impala was stopped, and Officer Lee found Appellee beneath the Charger.

Although there were certain discrepancies in the evidence regarding the timing of the chase and stop, these discrepancies go to **weight and credibility**, which are not appropriate factors for consideration at the preliminary hearing stage. ***See Ouch, supra***. Despite the complainant's

inability to positively identify Appellee as one of the perpetrators, the logical inferences from the evidence outlined above, when **read in a light most favorable** to the Commonwealth, establishes a *prima facie* case that Appellee was probably one of the perpetrators of the crimes at issue. ***See Perez, supra***; ***Ouch, supra***. ***See also Dunkins, supra***; ***Ovalles, supra***. Accordingly, we reverse the trial court's order denying the Commonwealth's motion to refile charges against Appellee and remand for further proceedings consistent with this decision.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/21/2025</u>